Nov. Term, 1849.

THE BOARD OF COMMISSION-<br>ERS, &c.,<br>v.<br>HILDEBRAND.

---

THE BOARD OF COMMISSIONERS OF SWITZERLAND COUNTY *v.*
HILDEBRAND.

The provision made by law for the support of the poor is a charitable pro-
vision, and the commissioners of a county cannot sue a husband for the
support of his wife, who is a pauper.

ERROR to the *Switzerland* Circuit Court.

PERKINS, J.—This was an action of assumpsit by the board of commissioners of *Switzerland* county against *Benjamin Hildebrand*. The declaration contained three counts. The first was for the board and lodging of the wife of the defendant The second was for the board, lodging, &c., of the wife of the defendant in the poor-house of *Switzerland* county. The third was for the board, lodging, &c., of the wife of the defendant in said poor-house, and alleged, in addition, that the defendant neglected and refused to provide for her. It did not state

Friday,<br>December 7.

Nov. Term, 1849.

THE BOARD OF COMMISSION-ERS, &c. v. HILDEBRAND.

whether the neglect arose from poverty, from inability to provide support, or otherwise. There was a general demurrer to the whole declaration. The demurrer was sustained, and final judgment given for the defendant.

The first count in the declaration was bad. The commissioners of *Switzerland* county could not open a boarding-house, and carry on the business of boarding, &c., for pay, at the expense of the county.

The second count was bad. The county commissioners could not convert the *Switzerland* county poor-house into a boarding house for such as wished accommodations for pay.

The third count was bad. If *Hildebrand's* wife was a proper subject to be placed in the poor-house, and, nothing appearing to the contrary, we must presume she was, from the fact of her being placed there by the overseers of the poor, (as is shown by the declaration,) no person is liable to the county for her support while there. And if she was not a proper subject for the poor-house, then the act of placing her there was unauthorized, and the commissioners, according to the decision upon the first and second counts, could not sue for her maintenance. We consider the provision made for the poor of the state, as a charity which the public is bound to bestow. No authority is given by law to the commissioners of a county to sue, as in this case, for the support of a pauper (1).

*Per Curiam.*—The judgment is affirmed with costs.

*J. Dumont*, for the plaintiff.

*J. T. Brown* and *E. Dumont*, for the defendant.

---

(1) The following case is found in Chipman's (Vermont) Reports of 1790, which is in point:

*Indebitatus assumpsit* for money laid out and expended.

*Non-assumpsit* pleaded. 

It appeared in evidence that in the year ——, the defendant was resident at *Bennington*, but not an inhabitant. The defendant, his wife, and two or three children, were taken sick, and in very distressed circumstances, being poor and unable to provide for themselves; the selectmen of *Bennington* provided for them as paupers and advanced for their relief the sum demanded in their declaration; the wife and one or more of the children

died; the defendant, on his recovery, removed out of the state; returning afterwards on business, the present action was brought.

A motion was made that one of the plaintiffs, a selectman, might be sworn to prove a special agreement of the defendant to re-pay. *By the Court.*—He cannot be admitted.

The Chief Justice, in his charge to the jury observed, that this was an action the first of the kind, which he had ever known; an action brought by the town against a pauper to recover back money expended for his relief. There is in this case no special agreement to re-pay. It rests on the general implication of law in such cases. As the money was advanced, if the law implies generally an obligation on the part of the pauper to re-pay such moneys as the town may have advanced for his relief, then the plaintiffs ought to recover. This may be gathered from the intention of the law in the provision made for the relief of the poor.

The provision made by law for the relief of the poor, is, in my opinion, a charitable provision. To consider it in any other light, detracts much from the benevolence of the law, and casts a reflection on the humanity of the richer portion of community. Poverty and distress give a man by law a claim on the humanity of society for relief; but what relief, if the town have a right immediately to demand re-payment? And to imprison the pauper for life in case of inability to pay? This, instead of a relief, would be adding poignancy as well as perpetuity to distress. If this be so, certainly the law raises no promise.

Verdict for the defendant, *August* term, 1791. On a review, the defendant again had a verdict.—*Selectmen of Bennington* v. *McGennes*, Chip. Vt. R. 45.