## Stewart's Estate.

*Poor law—Acceptance of relief—Repayment to poor district—Real estate—Decedents' estates.*

1. Acceptance by a poor person of relief from a poor district creates no personal obligation enforceable at law against the person accepting the relief, to reimburse the poor district, in the absence of a statute imposing such obligation.

2. While under certain statutes a poor district may reimburse itself out of a pauper's personal property, or out of the rents and profits of his real estate, there is no statute which gives to a poor district the right to share in the distribution of the proceeds of a judicial sale of the real estate of a pauper for the payment of debts, made after the death of the pauper.

Argued May 13, 1908.  Appeal, No. 102, April T., 1908, by City of New Castle Poor District, from decree of O. C. Lawrence Co., March T., 1907, No. 30, dismissing exceptions to auditor's report in Estate of Isabella Stewart, deceased.  Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.  Affirmed.

Exceptions to report of Charles R. Davis, Esq., auditor.

The facts are stated in the opinion of the Superior Court.

The court below in an opinion by PORTER, P. J., dismissed the exceptions.

*Error assigned* was decree dismissing the exceptions to auditor's report.

*James A. Gardner,* city solicitor, for appellant.—The obligation incurred in this case is in the nature of a debt against the decedent's estate: Directers of the Poor v. Nice, 161 Pa. 82.

If the estate of the pauper is liable to pay the expenses incurred during the lifetime of the pauper as an obligation, that obligation, if not paid, is fastened on her estate: Taylor's Estate, 10 York, 113.

Poor directors can recover upon distribution of the pauper's estate in the orphans' court, for maintenance and support furnished the deceased pauper in his or her lifetime: Mumma's Appeal, 127 Pa. 474; Taylor's Estate, 10 York, 113; Foley's Estate, 14 Pa. Dist. Rep. 681; Lancaster County Poor Directors v. Hartman, 9 Pa. C. C. Rep. 177.

We are not without authority on the point that the obligation in such cases continues, and continues even as against land: Jester v. Overseers of The Poor of Jefferson Twp., 11 Pa. 540; Lower Augusta Twp. v. Northumberland County, 37 Pa. 143; Erisman v. Directors of Poor of Lancester County, 47 Pa. 513.

The heir to the estate of Mrs. Stewart is an only son, who by the laws of this commonwealth was under obligation to take care of her; and for that reason he should not in equity take this money as against the poor district: Pitcairn's Estate, 37 P. L. J. 184; Kolb's Estate, 6 Pa. Dist. Rep. 543.

*James M. Martin,* for appellees.

OPINION BY RICE, P. J., February 26, 1909:

The decedent was an aged woman having no income, in destitute circumstances, not able to work, but owning a small house and lot in the city of New Castle where she resided. For a time her needy condition was relieved by the charitable contributions of provisions and other supplies by a church or its members. In October, 1904, a member of the church called the attention of the director of the poor of the city to her condition, and interested him in the case. The director testified: "I went and investigated. I knew the woman, she had property but nothing to live on. I did not want to throw her out of her house as she would be wholly on the city. She had no income and was not able to work, was not able to procure a living for herself. She did not come to me originally, she has been there several times since, every other Saturday to get orders, but only three or four times personally." Being satisfied upon investigation that she was a person needing relief, he entered her name in the poor book and furnished her relief to the extent of $1.50 per week until March, 1906. This, it is claimed and admitted by counsel, he was authorized to do, without an order of relief, by sec. 1 of the Act of June 14, 1901, P. L. 561, relating to cities of the third class. The mode of furnishing relief was by orders upon dealers for goods, which orders she either applied for to the director in person or by messenger. This went on until she borrowed from a third person $300, securing the loan by a lien upon her premises, and from that time until her death she received no relief from the city. After her death her real estate was sold under a decree of the orphans' court for the payment of debts. Upon the settlement of her estate a small balance of the fund derived from that source remained for distribution. This appeal is from the decree of the orphans' court awarding it to the appellee, the son and only heir of the decedent, and rejecting the claim of the city to be reimbursed for the expenses it had incurred in the support of the decedent.

It is impossible to see upon what sound legal principle it can be held that where a poor district, charged with the duty of

caring for the poor, furnishes relief to one needing and entitled to it under the poor laws, and only to the extent that his needy condition requires, a personal obligation, enforceable at law, to reimburse the poor district is thereby incurred, in the absence of a statute imposing such obligation. Nor is it perceivable that in such a case a request on his part for relief carries with it an implied promise to that effect. The fund administered by the district is created for the purpose of furnishing charitable relief to certain persons, and where one within the class applies for assistance from that fund the natural and conclusive inference is, in the absence of anything else to show the contrary, that he, as well as the poor authorities, has in mind the bestowal of the charitable relief, which, under the law, it is obligatory on the latter to furnish. To imply a contract to repay would be contrary to the fact, and contrary also to the general current of decision in jurisdictions where no such obligation is created by statute: Deer Isle v. Eaton, 12 Mass. 327; Stow v. Sawyer, 85 Mass. 515; Bennington v. McGennes, 1 D. Chipm. (Vt.) 44; Benson v. Hitchcock, 37 Vt. 567; Charlestown v. Hubbard, 9 N. H. 195; Chester v. Underhill, 16 N. H. 64; Albany v. McNamara, 117 N. Y. 168; s. c., 6 L. R. A. 212; Bremer County v. Curtis, 54 Iowa, 72; Jones County v. Norton, 91 Iowa, 680.

The common-law rule has been changed in Pennsylvania by sec. 33 of the Act of June 13, 1836, P. L. 539, so far as to enable the directors of the poor of any county, and the overseers of any district, as the case may be, in which any person shall have become chargeable, to sue for and recover any real or personal estate belonging to such person, and to sell or otherwise dispose of the personal property, and to collect and receive the rents and profits of the real estate, and to apply the proceeds, or so much thereof as may be necessary, to defray the expenses incurred in the support and funeral of such person. Additional remedies have been given by later statutes, but as none of them is applicable here they need not be discussed. It may be conceded that the granted right to sue for, recover and sell, or otherwise dispose of, the poor person's personal estate, and to appropriate the proceeds to defray the expenses incurred by the poor district, includes the right to maintain a claim in the or-

phans' court for reimbursement out of the deceased pauper's personal estate.  That proposition was argued in Mumma's Appeal, 127 Pa. 474, and while the Supreme Court did not pass upon it, it is in accordance with the decisions of the orphans' court in that and in two or three other cases.  In Directors of the Poor, etc., of Montgomery County v. Nyce, 161 Pa. 82, the point decided was this: One Malone while a charge upon the district and an inmate of the almshouse was bequeathed a legacy which came into the hands of his committee, Malone being at the time insane.  It was held upon case stated in assumpsit, which ruling was approved on appeal, that under sec. 33 of the act of 1836 the expenses incurred by the poor authorities for his previous maintenance were recoverable from the committee. All of these cases have the support of the express provisions, properly construed, of the act relating to personalty.  In Jester v. Overseers of the Poor of Jefferson Township, 11 Pa. 540, it was held that the overseers of the poor had a right to be substituted as plaintiff for one who, after bringing an action of ejectment to recover his life estate, became and died a pauper, upon the ground that they, and not the heirs at law, were next in interest to the plaintiff under sec. 3 of the Act of April 13, 1807, 4 Sm. L. 476.  Of course the only purpose in substituting the overseers as plaintiff was to enable them through the pending action to recover the rents, issues and profits that had accrued in the lifetime of the decedent.  Thus it will be seen that this case also had the support of the express provision properly construed of the act relating to the real estate of a pauper.  But these cases do not establish a principle that controls in the distribution of the proceeds of a judicial sale of real estate for the payment of debts, made after the death of the pauper.  So far as real estate is concerned, the right of the poor district is restricted by the plain terms of the act of 1836 to the recovery thereof and the taking of the rents, issues and profits. The right given by the later Act of April 4, 1877, P. L. 51, to lease the real estate does not affect the question before us, except as it strengthens the conclusion that the legislature never intended to give the poor district the right, either directly or indirectly, to appropriate the corpus of the estate.  In the

present case the poor district did not elect to exercise its power relative to the decedent's real estate in her lifetime or afterwards. On the contrary, it is fairly inferable from the testimony of the director that it was deemed for the best interests of the poor district not to do so. But be the inference from his testimony as it may, it is plain that the claim of the poor district acquired no lien on her real estate in her lifetime. This is conceded by the learned counsel for the appellant, but he argues that, being a debt or obligation which was not extinguished by her death, and the lands of decedents being assets for the payment of debts, the claim became a lien upon her death for the period of two years, by operation of the law relating to the lien of unsecured debts of decedents. When one applies for and accepts charitable relief there may be a legal presumption, in view of the statutory provision above quoted, that he assents that his personal property shall be taken and sold by the district, and that his real estate, whether in his possession or that of another, shall be taken and the rents, issues and profits thereof applied to his future support or to the satisfaction of the claim of the district for past support. This, for present purposes may be conceded as bringing him into a quasi-contractual relation with the district. But that he thereby incurs a debt, in the ordinary sense of that term, for the recovery of which an action may be brought and a judgment recovered which may be satisfied by a forced sale of his real estate is a widely different proposition to which we cannot give assent. And if the impliedly contractual obligation, or more properly speaking statutory obligation, is not of that nature and scope at the death of the pauper, it is impossible to conclude that immediately thereafter it becomes a debt for the payment of which the poor district can compel a sale of the real estate, or appropriate the proceeds of a sale made for that purpose upon the application of some other person qualified to make it.

It is suggested as in some way supporting the appellant's claim, that the city was prevented from exercising its power under the act of 1836 relative to the real estate. This position does not seem to be warranted by any evidence that the poor authorities made opposition to the proceeding for the sale.

They had ample opportunity to exercise whatever right the city had in respect of the real estate. Apparently, however, and no doubt wisely, they chose not to take the land. Under all the circumstances, they must be deemed voluntarily to have rested on the chance of recovering the claim as an ordinary debt upon distribution of the decedent's estate.

The decree is affirmed at the costs of the appellant.