LORAN ANDREW MICHEL, by his father and next friend, JOHN MICHEL, et al., appellants, v. STATE BOARD OF SOCIAL WELFARE et al., appellees.

No. 48488.

(Reported in 65 N.W.2d 89)

JUNE 15, 1954.

Doran, Doran, Doran & Erbe, of Boone, for appellants.

Herman W. Walter, Special Assistant Attorney General, of Council Bluffs, for appellee State Board of Social Welfare.

THOMPSON, J.—Loran Andrew Michel was born on December 2, 1919. Early in life he became blind, and for some time prior to August 1, 1940, he drew a pension from the State of Iowa, as provided by chapter 241, Code of Iowa, 1950. On August 3, 1940, he was adjudged insane, and was committed to the State Hospital at Clarinda, where he has since been confined. His blind person's pension was at once terminated by the state, under the provisions of paragraph 4, section 241.2. No appeal was taken from this ruling, nor has any further application for the pension been made.

It is not disputed that Loran Andrew Michel has at all times had his legal settlement in Boone County. The state has since his commitment charged the cost of his support to this county, which in turn, under section 230.15, Code of Iowa, 1950, has attempted to collect it from the plaintiffs John Michel and Ella Marie Michel, his parents. A settlement was made for all sums claimed prior to March 31, 1950. The county having made a further claim against the parents for support from the latter date to and including September 30, 1952, this action was brought for the purpose of determining the rights and liabilities of the plaintiffs under the pertinent statutes.

I. The important statutes are sections 230.15 and 241.2, particularly paragraph 4 thereof, supra. We set out the material parts of these statutes herewith.

"230.15 Personal liability. Insane persons and persons legally liable for their support shall remain liable for the support of such insane. Persons legally liable for the support of

an insane or idiotic person shall include the spouse, father, mother, and adult children of such insane or idiotic person, and any person, firm, or corporation bound by contract hereafter made for support. The county auditor, subject to the direction of the board of supervisors, shall enforce the obligation herein created as to all sums advanced by the county."

"241.2 Eligibility for assistance to the needy blind. Assistance shall be granted under the provisions of this chapter to any blind person who: * * *.

"4. Is not an inmate of a public institution. An inmate of such an institution may, however, make application for such assistance, but the assistance, if granted, shall not begin until after he ceases to be an inmate."

Paragraph 8 of section 241.2 provides in effect that the blind person must be needy; but there is no doubt Loran Andrew Michel fulfills this requirement.

Plaintiffs' action raises the contention they should not be charged with the support of Loran Andrew Michel at the state hospital. It is their claim that, since he is a blind person who would be entitled to collect a pension from the state under the provisions of chapter 241 if he were not committed to the state hospital, it is unjust to deprive him of the pension and to charge him, or his parents, for his support. We do not understand that they seriously challenge the right of the state to terminate the pension. However, under their theory, the two questions of the right to terminate the pension and the right to charge for support in the state hospital are closely related. If Loran were not blind, the duty of his parents to pay for his support while in the state institution, under section 230.15, would be clear. It seems to follow that if the state has properly terminated his pension for the blind, he has the same status as any other insane person so confined.

■■ At common law the public authorities have no duty to support paupers or other needy persons. Such duty, where it exists, rests entirely on statute. 70 C. J. S., Paupers, section 3, page 10; Wood v. Boone County, 153 Iowa 92, 93, 133 N.W. 377, 39 L. R. A., N. S., 168, Ann. Cas. 1913D, 1070; Cooledge v. Mahaska County, 24 Iowa 211, 213. This being so, it must be equally true that where the state or one of its subdivisions

has assumed the duty of support, it may be limited by statute. That is to say, the duty goes no farther than the statute prescribes, and the claimant must show he comes within its terms. In the case before us the state saw fit to provide the support should not be furnished to a blind person who becomes an inmate of a public institution.

II. Nor may we resort to rules of statutory interpretation to aid the plaintiffs. The statutes are clear and admit of only one meaning. Under such circumstances it is said there is no room for interpretation; or, perhaps, more logically, there is only one possible interpretation that may be made. Jones v. Thompson, 240 Iowa 1024, 1036, 1037, 38 N.W.2d 672, and cases cited therein.

The Code sections applicable here—paragraph 4 of 241.2, and 230.15—are in no manner ambiguous. Each admits of only one interpretation. Paragraph 4 of section 241.2 denies any right of Loran Andrew Michel to a pension for the blind while he is confined in the state hospital; section 230.15 fixes the liability of parents of an insane person for his support. There is no intimation, much less an expression, of any intention to exempt the parents of blind persons who are also insane from liability for their support while they are inmates of state institutions. The matter is entirely statutory, and the courts must follow the plain meaning of the legislative enactments.

The trial court properly held the parent-plaintiffs to be liable for the support of their son.—Affirmed.

All JUSTICES concur.